UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

CHARLES LEON BROWN,

                    Defendant.

94-Cr-631 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    From 1988 to 1994, defendant Charles Leon Brown was the leader of the 142nd Street Lynchmob Crew, which ran an extensive narcotics operation and sold hundreds of kilograms of powder and crack cocaine in Harlem. (PSR ¶¶ 1-3, 33-41.) The Lynchmob operated its business through murder, other acts and threats of violence, and intimidation. Brown is responsible through his own actions and those of his Lynchmob subordinates for the murder or attempted murder of numerous individuals. Brown is currently serving a life sentence for his crimes. (J., ECF No. 321.) Brown now moves for a reduction of his life sentence under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Because the Court finds that a sentence reduction would be inconsistent with the factors under 18 U.S.C. § 3553(a), Brown's motion is denied.

### I.    Exhaustion of Remedies

    The Government urges that Brown has not exhausted his administrative remedies as required by section 3582(c)(1)(A) because his administrative request, which he filed with the warden of USP Terre Haute, concerned only his medical issues and neglected to raise other grounds for his release, such as COVID-19. This argument fails for two reasons. First, section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional and the Court may thus hear Brown's motion regardless of whether the exhaustion requirement has been met. *United States v. Saladino*, 7 F.4th 120, 122–23 (2d Cir. 2021). Second, exhaustion of remedies under section 3582(c)(1)(A) does not require the defendant to list every possible ground for his release in his administrative request. *See United States v. Torres*, 464 F. Supp. 3d 651, 655 (S.D.N.Y. 2020). Therefore, the Court may consider Brown's motion even though he did not raise COVID-19 as a ground for release in his administrative request.

### II.    Extraordinary and Compelling Reasons

    While the statute permits this Court to hear Brown's request, it allows courts to grant sentence reductions only in very limited circumstances. Specifically, a court may

only reduce a defendant's sentence if the defendant shows "extraordinary and compelling reasons" meriting a reduction, 18 U.S.C. § 3582(c)(1)(A)(i), and that such a reduction would be consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). The Court has discretion to consider a wide range of factors in its analysis of whether "extraordinary and compelling reasons" exist in this case. *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

Here, Brown has demonstrated evidence of rehabilitation. While in prison, Brown earned his GED and has completed numerous classes focused on practical subjects, such as how to obtain a commercial driver's license, financial budgeting, and other life skills. (ECF No. 539.) Brown has further managed to maintain a reasonably clean disciplinary record, with simply five infractions over his 26 years in prison, with the most recent incident report having been filed a full four years ago. (Def. Ex. 11.) Nevertheless, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

Brown also puts forth evidence of significant medical problems arising out of his severe obesity. (ECF No. 539 at 30.) Brown attests to the difficulties his medical conditions impose on his daily existence in prison: in addition to suffering from such ailments as chronic kidney disease, his severe obesity makes it difficult to move about his cell or without using a wheelchair, and he asserts that he must rely on his cellmate to assist him with activities such as using the bathroom. (*Id.* at 14-15.) The Court acknowledges that chronic kidney disease and severe obesity are both conditions that increase the risk of serious COVID-19 infection. *People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021).

Brown has received both doses of the Pfizer vaccine, and therefore his risk of contracting COVID-19 is lower than it was earlier in the pandemic. (ECF No. 539 at 16.) There is reputable data on the continued efficacy of Pfizer and other COVID-19 vaccines, even among individuals with underlying medical conditions. *Considerations for People with Underlying Health Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html#underlying-conditions (last updated Oct. 27, 2021). In addition, the vast majority of serious COVID-19 infections affect unvaccinated individuals. Emily Anthes, *What Scientists Know About the Risk of Breakthrough Covid Deaths*, N.Y. TIMES (Oct. 18, 2021), https://www.nytimes.com/2021/10/18/health/coronavirus-vaccine-powell-breakthrough.html ("People who are fully vaccinated are roughly one-tenth as likely to be hospitalized and even less likely to die from Covid-19 than those who are unvaccinated, according to a recent study from the Centers for Disease Control and Prevention."). The threat of COVID-19 alone is not an "extraordinary and compelling"

circumstance. *United States v. Lin*, No. 09-cr-746 (SHS), 2021 WL 2930987 at *2 (S.D.N.Y. July 12, 2021).

Regardless of whether Brown's medical conditions and evidence of rehabilitation, combined with the persistence of the pandemic, rise to the level of extraordinary and compelling reasons, the Court must also assess whether such a reduction would be consistent with the factors enumerated in 18 U.S.C. § 3553(a). *See id.*, at *1; *United States v. Davis*, No. 12-cr-712 (SHS), 2020 WL 3790562, at *2 (S.D.N.Y. 2020).

### III. The Section 3553(a) Factors

In order to obtain a reduction in his sentence, Brown must demonstrate that a reduction is consistent with the 18 U.S.C. § 3553(a) sentencing factors. Those factors include, among others, (1) "the nature and circumstances" of the offense, (2) "the history and characteristics of the defendant," and (3) "the need for the sentence imposed . . . to reflect the seriousness of the offense." *Id.* § 3553(a)(1)–(2). If the defendant fails to meet his burden these factors, the motion for compassionate release must be denied.

Under Brown's leadership, the Lynchmob "engaged in narcotics trafficking, murders, attempted murders, robberies, and assaults." (PSR ¶ 32.) By his own admission, Brown was involved in "brutal murders," (Defendant's Affidavit, Def. Ex. 3, at 2), and his actions directly led to the murders of at least six individuals. (PSR ¶¶ 39-48.) First, Brown directed the murder of Carlton Henry, a member of the Lynchmob, to clear his own way to control the gang. (PSR ¶ 39.) Next, Brown accepted a contract from one of his cocaine suppliers to murder both Tyrone Lineburger and Steven Bozeman, members of a rival gang. (PSR ¶ 44). Moreover, Brown directed the murders of Robert Travis Reeves and Anthony Jackson, despite initially claiming that he was not involved. (PSR at 31.) Brown also co-directed the murder of Ronald Hill, which he did not disclose to the government until nearly one year after he had entered his guilty plea in this action. (PSR at 35.)

In addition, Brown participated in the attempted murders of at least two more individuals. Brown and his codefendant Louis Griffin directed the attempted murder of Harold Brown after a financial dispute. (PSR ¶ 40.) Brown also accepted a contract to kill Conrad Layton; Layton survived a shooting by Brown's co-defendant Anthony Pope, to whom Brown gave the contract. (PSR ¶ 75.) Furthermore, Brown knowingly provided the weapons used to murder two others, Woodrow Sultan and Darnell Wells. (PSR at 34; Def. Ex. 8, at 2). In sum, Brown's pre-sentence investigation report makes clear the commanding role he had as the driving force of several murders, and his involvement in several additional murders or attempted murders.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ U.S. District Judge John S. Martin, who sentenced Brown, reasoned that Brown's conduct was "the type . . . that no civilized society can countenance and for which the ultimate penalty is not unreasonable." *Id.* at 50. Indeed, Brown's crimes were extremely serious – so serious that a reduction in his sentence would be inconsistent with the section 3553(a) factors. As the leader of the Lynchmob, Brown's directions and actions contributed to the loss of many lives. The number of murders and attempted murders in which Brown played a key role underlines the grave "nature and circumstances" of the offense, as well as its extreme seriousness. *See* 18 U.S.C. § 3553(a)(1)–(2).

Because the Court finds that the section 3553(a) factors do not support a reduction in his sentence, Brown's motion for a sentence reduction is denied.

Dated:  New York, New York
        November 1, 2021

SO ORDERED:



Sidney H. Stein, U.S.D.J.